### IN THE UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF FLORIDA
### PANAMA CITY DIVISION

**BILLY HAND,**
     **Plaintiff,**

**v.**                                                      **No: 5:07cv258/RH/MD**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**
     **Defendant.**

_____

### REPORT AND RECOMMENDATION

**This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Hand's application for disability insurance benefits under Title II of the Act.**

**Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.**

### PROCEDURAL HISTORY

**Plaintiff filed an application for disability insurance benefits claiming a disability onset date of September 11, 2001, later amended to October 29, 2004 (tr.**

286).  The claim was denied initially and on reconsideration and plaintiff requested a hearing before an Administrative Law Judge (ALJ).  A hearing was held on January 11, 2007 at which plaintiff was represented by counsel and testified.  Also testifying were Dr. Bruce Whitkind, M.D., a medical expert (by telephone), and Gayle Jarrell, a vocational expert.  The ALJ rendered an unfavorable decision on April 3, 2007 (tr. 18-29) and the Appeals Council declined review (tr. 5-7), making the decision of the ALJ the final decision of the Commissioner, and therefore subject to review in this court. *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998).  This timely appeal followed.

## FINDINGS OF THE ALJ

Relative to the issues raised in this appeal, the ALJ found that the plaintiff last met the insured status requirements of the Social Security Act on December 31, 2006; that he had severe impairments consisting of (1) low back pain with radiculopathy, (2) chronic headaches, and (3) obesity, but that he did not have a medically determinable mental impairment, and further did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; that through the last date insured, the plaintiff had the residual functional capacity (RFC) to perform a range of light work, including the ability to lift and carry a maximum of 20 pounds occasionally and 10 pounds frequently and to push/pull these weights, as well as to sit, stand and/or walk for about six hours each in an eight hour workday with the option of alternating between sitting and standing; that plaintiff was unable to perform his past relevant work; that he was a younger individual with a high school education and the ability to communicate in English; that through the last date insured, considering the plaintiff's age, education, work experience and RFC there were jobs that existed in significant numbers in the national economy that the plaintiff could perform; and that plaintiff was not under a disability as defined in the Act through his last date insured.

## STANDARD OF REVIEW

The ALJ's decision will be reversed only if it is not supported by substantial evidence. *Falge, supra*. The court must determine whether the Commissioner's decision is supported by substantial evidence in the record and whether it is premised upon correct legal principles. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983). In determining whether substantial evidence exists, the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)(citations omitted). Findings of fact by the Commissioner that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

 A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps. A finding of disability or no disability at any step renders further evaluation unnecessary. The steps are:

1.      Is the individual currently engaged in substantial gainful activity?

2.      Does the individual have any severe impairment?

3.      Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4.      Does the individual have any impairments which prevent past relevant work?

5.      Do the individual's impairments prevent any other work?

The claimant bears the burden of establishing a severe impairment that keeps him from performing his past work. If the claimant establishes such an impairment, the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. *Chester v. Bowen*, supra, 792 F.2d at 131; *MacGregor v. Bowen*, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, claimant must prove that he cannot perform the work suggested by the Commissioner. *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

## PLAINTIFF'S MEDICAL HISTORY

Central to the resolution of this case is plaintiff's last date insured (LDI). The ALJ found, and plaintiff does not dispute, that the plaintiff's LDI was December 31, 2006. Plaintiff must therefore provide that he was disabled on or before that date in order to be entitled to disability insurance benefits. *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979) ("if a claimant becomes disabled after he has lost his insured status, his claim must be denied despite his disability"); 42 U.S.C. §§ 416(I)(3), 423(c)(1).

Plaintiff suffered a job related injury on December 11, 1999 when he hurt his back unloading a truck in the normal course of his work as a long distance truck

driver.  He was initially treated conservatively by Gregg Alexander, M.D., a family practitioner.  He was evaluated with a Physical Capacity Evaluation (PCE) in October 2001 which demonstrated an ability to work at a light duty level with a 15 pound lifting limit for occasional lifting (tr. 228).  On November 11, 2001 plaintiff returned to Dr. Alexander continuing to complain of pain on forward bending.  He had normal reflexes and normal strength, although there seemed to be some radicular pain into the right anterior thigh.  Dr. Alexander noted the plaintiff had earlier been rated at maximum medical improvement with an eight percent whole person permanent impairment.  He further noted that plaintiff's work status would be set in accordance with his PCE, and further recommended that the plaintiff be retrained (tr. 228).

Dr. Alexander referred plaintiff to Charles Wingo, M.D., a neurosurgeon, who saw him on December 19, 2001.  Plaintiff reported to Dr. Wingo that there was pain in the back of his right leg with numbness, and that the discomfort had increased over the prior four to six months.  He stated that when he was injured he weighed over 300 pounds but had lost about 50 pounds since then.  His physical examination was essentially normal other than a moderate limitation of flexibility in the mid-spine, some hamstring tightness on straight leg raising, a 20˚ deficit on external rotation of the right hip, and hip flexion weakness on the right.  Reflexes were normal.  Dr. Wingo reviewed an MRI done in 2000 which showed a left side protrusion at L5-S1, a central protrusion toward the right at L4-5, and the appearance of a slight far lateral protrusion at L3-4 on the right.  Dr. Wingo felt that plaintiff had chronic lumbar radicular syndrome which appeared to be getting worse and recommended an electromyogram (EMG) in conjunction with an MRI.  He advised the plaintiff that if there was no change in appearance from the previous MRI and there was no active radiculopathy then he had nothing else to offer (tr. 226-227).

An MRI was performed on January 10, 2002 and was read as being similar to the findings described in the earlier MRI (tr. 225).  Plaintiff returned to Dr. Wingo on April 15, 2002.  Dr. Wingo's notes indicate that he had administered two epidural

steroid injections following the repeat MRI and EMG, but that the injections had not helped.  His physical examination was substantially the same as before.  Dr. Wingo reported that the EMG did not show any ventral root denervation and that plaintiff was not a candidate for surgery.  It was recommended that plaintiff go to Weight Watchers and lose 60 pounds over the next year, continue his educational efforts to be able to return to gainful employment in an occupation other than as a driver, and consult someone for pain management (tr. 222-223).

Plaintiff returned to his regular treating physician, Dr. Alexander, on August 29, 2002.  Dr. Alexander noted that plaintiff was known to have disc protrusion at L3-4 on the left and annular tears at L4-5 and L5-S1, with other findings suggestive of possible left S1 radiculopathy.  He therefore ordered a repeat MRI of the lumbar spine and an EMG of the left leg (tr. 219).  The EMG was performed on September 25, 2002.  The neurologist's conclusion was "Abnormal study.  Findings are suggestive of diffuse irritability of the left S1 more than L4 muscles with findings suggested of S1 radiculopathy at the paraspinal level." (Tr. 217).  An MRI of the lumbar spine performed on August 29, 2002 was reported as showing no significant change since January 10, 2002 (tr. 215-216).

Plaintiff returned to Dr. Alexander on October 10, 2002.  Dr. Alexander noted the results of the MRI and EMG tests and reported that plaintiff was in Weight Watchers and was making progress as well as performing a vigorous regimen for general conditioning and spine strength.  He also noted that plaintiff had turned in numerous job applications but had not been successful in finding employment.  He further noted that in all areas for which plaintiff had experience, education and training, he was probably not employable.  His Physical Capacity Evaluation showed that he had a 15 pound lifting limit and this was still regarded as reliable.  Dr. Alexander also noted some concern about vocational training because plaintiff was working on remedial math skills necessary to be accepted for job retraining.  Finally, there were no findings of radiculopathy on physical examination and Dr. Alexander

felt that plaintiff's work status remained light duty with a 15 pound lifting limit, and recommended that plaintiff continue with a physical fitness program and lose weight (tr. 213).

Plaintiff next saw Dr. Alexander on March 10, 2003. He had gained 13 pounds. He indicated that he was in pain because of the 45 mile drive to his remedial math class.  His range of motion was limited but there was no neurological deficit detected by examination.  Plaintiff's work status remained light duty with a 15 pound lifting limit.  He was told he had to alternate between sitting and standing and that he could sit or stand for a total of four hours per day, but for no more than 30 minutes consecutive for either (tr. 212).

Plaintiff returned to Dr. Alexander on October 13, 2003 indicating that he had settled his workers compensation claim.  Dr. Alexander noted that plaintiff had not been exercising faithfully, that there was general deconditioning, and that he had gained another 13 pounds, meaning 26 pounds over the last year.  Reflexes and motor examinations were normal.   There was slight sensory loss in the L5 dermatome on the left leg.  Dr. Alexander felt that plaintiff probably could not work at the same level as he could have at the time of the FCE of October 2001, and that the recommendations of that evaluation would probably no longer accurately reflect plaintiff's true abilities (tr. 210).

Plaintiff returned to Dr. Alexander on March 30, 2004.  He indicated that he was applying for social security disability and Dr. Alexander filled out some forms for him.  On examination, plaintiff reported pain with minimal forward and backward bending. Reflexes were symmetric. There was weak or break-away effort on manual leg testing in all the major muscle groups of the right leg and most of the left leg. Dr. Alexander felt that neurogenic weakness could neither be confirmed nor excluded based on this test (tr. 208).

Plaintiff was next seen by Dr. Alexander nearly a year later, on February 22, 2005.   He indicated  that  he  had  been  looking  for  work  but  had  become

unemployable.  He had no income and no prospects.  Physical examination was not significantly different from before.  Dr. Alexander concluded "[i]n summary, it would appear that Billy is totally disabled.  He has a legitimate medical condition, work experience only in labor intense occupations, no transferrable skills, and no employment opportunities.  At the present time I am unable to help him unless he can get some degree of funding so that he can move on with repeat diagnostics." (Tr. 207).  Plaintiff's condition had not changed on May 12, 2005.  At that time Dr. Alexander noted that he did not believe plaintiff could return to his usual occupation but that he "certainly may be able to return to work at a less physically demanding profession if he has additional retraining, and possibly some additional medical coverage." (Tr. 205).

An MRI performed on June 30, 2005 showed disc degeneration from L3 through S1.  There was mild central stenosis due to disc protrusion and facet hypertrophy at L3-4 but no significant neural compromise at L4-5.  There was irregular disc protrusion eccentric to the left at L5-S1 which appeared to encroach on the left S1 nerve in the lateral recess, displacing that nerve root posteriorly (tr. 203-204).  An EMG performed a week later showed evidence of generalized muscle irritability in the left leg and paraspinals which might be a normal variant.  The irritability was much more prominent in the left L4 myotome, particularly at the paraspinal level which was suggestive but not diagnostic of left L4 radiculopathy (tr. 202).  Plaintiff returned to Dr. Alexander on July 28, 2005 unchanged.  Dr. Alexander noted that plaintiff could no longer drive a truck, had a GED with minimal transferrable skills, could not sit or stand for prolonged periods, could not do any heavy lifting, and that his employment prospects were probably very minimal (tr. 201).

Plaintiff returned to Dr. Alexander eight months later, on March 7, 2006, essentially unchanged.  Dr. Alexander noted that plaintiff could not work in his usual capacity and as of that date "he would appear to be unable to work in any

meaningful capacity" and that he may be a surgical candidate (tr. 200).  On July 27, 2006, Dr. Alexander noted that plaintiff's lumbar radiculopathy was less evident (tr. 255).  He filled out a checklist in which he opined that the plaintiff could not sustain activity at a pace and with the attention to task as would be required in the competitive workplace, could not sit for up to six hours in a normal position, and could not be expected to attend any employment on an eight hour/five days a week basis (tr. 254).  On October 20, 2006 Dr. Alexander noted that plaintiff moved at about half his normal speed, stood bending forward, had moderate muscle tightness in the mid and low back, and decreased range of motion in all planes, but Dr. Alexander could not detect clear evidence of lumbar radiculopathy.  There was break away weakness in the legs, probably secondary to back pain, but no atrophy (tr. 260).  That same day Dr. Alexander answered "yes" to a question posed to him by plaintiff's attorney asking whether in his opinion plaintiff satisfied the requirements of Listing 1.04A of the Listing of Impairments in the Social Security Regulations (tr. 261-262).

Plaintiff's other treating physician was C.S. Bristol, M.D., who treated plaintiff for bronchitis and headaches in late 2005 and early 2006 (tr. 243-245).  On August 14, 2006 Dr. Bristol filled out forms indicating that plaintiff could not sustain appropriate activity at a pace necessary in the competitive workplace, could not lift or carry ten pounds, could not sit up for six hours or stand for two hours, and that he suffered from severe migraine headaches (tr. 256).  Dr. Bristol also filled out a clinical assessment of pain form indicating that plaintiff's pain was such that he could not appropriately perform the daily duties of work, and could not function at a productive level of work (tr. 257-258).

In December 2004 plaintiff was evaluated at the request of the Office of Disability Determinations by Muhammad Naeem, M.D., an internist.  Dr. Naeem reviewed MRI reports which had been done through that date.  Physical examination revealed positive spasm and significantly decreased range of motion in the lumbar

spine.  Plaintiff walked with a limp but was able to walk, sit, stand, climb up to and get down from the examination table without difficulty.  Straight leg raising was positive on both sides secondary to spasm and pain.  Dr. Naeem's assessment and recommendations were (1) chronic low back pain, (2) history of back injury with degenerative disc disease and herniation at L5-S1 and unsuccessful conservative therapy.  Dr. Naeem also noted that it was very likely that plaintiff would not be able to resume heavy work including truck driving and was definitely a candidate for motivation and rehabilitation to find lighter work so he could again be productive (tr. 166-168).

# DISCUSSION

The plaintiff argues that the ALJ erred in failing to give proper weight to the opinions of treating physicians, in failing to find that certain impairments were severe, and in discounting plaintiff's subjective complaints of pain, and that plaintiff was disabled from his onset date as a matter of law.  The Commissioner argues that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained.  The issue thus presented is whether the ALJ's decision that the plaintiff was not disabled, in light of his physical condition, age, education, work experience, and RFC, is supported by substantial evidence in the record.

1.    Opinions of treating physicians.

Plaintiff first contends that the ALJ erred in rejecting the opinions of Dr. Alexander, who was plaintiff's physician over an extended period.  Plaintiff's argument has two basic components: that he met the requirements for disability under Listing 1.04A, and that even if he did not meet the listing, Dr. Alexander was of the opinion that he was disabled.  These arguments will be taken up in turn.

Shortly before plaintiff's LDI and the hearing, Dr. Alexander opined that plaintiff met the requirements of Listing 1.04A, and plaintiff bases the main thrust of his argument on this opinion.  Absent good cause, the opinion of a claimant's

treating physician must be accorded considerable or substantial weight by the Commissioner. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-1241 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Broughton v. Heckler*, 776 F.2d 960, 960-961 (11th Cir. 1985); *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986). "Good cause" exists when:  (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Phillips,* 357 F.3d at 1241; see also *Lewis*, 125 F.3d at 1440 (citing cases).

If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimants impairments.  See *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnor v. Bowen,* 816 F.2d 578, 582 (11th Cir. 1987).  When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) medical evidence supporting the opinion; consistency with the record as a whole; 5) specialization in the medical impairments at issue; and 6) other factors which tend to support or contradict the opinion.  20 C.F.R. 404.1527(d).

The opinion of a non-examining physician is entitled to little weight, and, if contrary to the opinion of a treating physician, is not good cause for disregarding the opinion of the treating physician, whose opinion generally carries greater weight. *See* 20 C.F.R. § § 404.1527(d)(1);  *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985); *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *Hurley v. Barnhart*, 385

F.Supp.2d 1245, 1255 (M.D.Fla. 2005).   However, a brief and conclusory statement that is not supported by medical findings, even if made by a treating physician, is not persuasive evidence of disability.  *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987); *Warncke v. Harris*, 619 F.2d 412, 417 (5th Cir. 1980).

"When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Phillips*, 352 F.3d at 1241.   Failure to do so is reversible error. *Lewis*, 125 F.3d at 1440 (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)); *see also Nyberg v. Commissioner of Social Security*, 179 Fed.Appx. 589, 591 (11th Cir. 2006) (Table, text in WESTLAW)(also citing *MacGregor*).

In support of his appeal, plaintiff advances the following arguments: (1) Dr. Alexander's opinion that plaintiff met the requirements of Listing 1.04A was supported by the required objective medical evidence, (2) testifying medical expert Dr. Whitkind was incorrect when he opined that there had been no true showing of radiculopathy, and therefore the ALJ erred in relying on that opinion, (3) even if he did not meet the Listing requirements, the ALJ erred in finding that Dr. Alexander's opinions overall were not supported by his own records, (4) the ALJ erred in relying on a notation that there had been deconditioning due to plaintiff's own behavior, (5) the ALJ erred in referring to plaintiff's course of treatment as "sparse," (6) the ALJ erred in stating that plaintiff went to Dr. Alexander on one or more occasion simply to have forms filled out, not for treatment, (7) the ALJ erred in finding that one of Dr. Alexander's opinions was not entitled to weight because it was outside his expertise,  (8) the ALJ erred in finding that plaintiff was "aggressive" in his efforts to find work, and (9) the ALJ erred in finding that plaintiff had been given leave, over a lengthy period, to go to work but had not done so.

Plaintiff argues that Dr. Alexander's opinion proves that he met the requirements of Listing 1.04A during the relevant time period, and therefore should have been held disabled without more.   The regulations promulgated by the Commissioner at Appendix 1, Subpart P, set out specific physical and mental

conditions that are presumptively disabling.  If a claimant meets the requirements of one of the listings, no further proof of disability is required.  *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).  Listing 1.04A provides:

> 1.04  *Disorders of the spine* (e.g., herniated nucleus pulposis, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  With:
>
> A.   Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight leg raising test (sitting and supine).

The introductory section of the listings also discusses what is needed to support the necessary findings, including "detailed descriptions of the joints, including ranges of motion, condition of the musculature (e.g. weakness, atrophy), sensory or reflex changes . . . and . . . findings on x-ray or other appropriate medically acceptable imaging."  20 C.F.R. Part 404, Subpt. P, App. 1, Part A, § 1.00C1.  Moreover, the physician's description of the findings "must be determined on the basis of objective observation during the examination and not simply a report of the individual's allegation; e.g. 'He says his leg is weak, numb.'"  20 C.F.R. Part 404, Subpt. P, App. 1, Part A, § 1.00D.

Thus, in order for this plaintiff to show that he meets the requirements of Listing 1.04A, he must prove (1) a herniation of a disc or degenerative disc disease with resulting compromise of a nerve root and (2) evidence of nerve root compression with (a) neuro-anatomic distribution of pain, (b) limitation of motion of the spine, (c) motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss,  (d) positive straight leg raising test (sitting and supine).  Moreover, the findings must be supported by detailed descriptions based on objective observations during examinations.  *See Bell v. Bowen*, 796 F.2d 1350 (11th Cir. 1986) (holding that where a plaintiff contends he has

a listed impairment, "he must present specific medical findings that meet the various tests listed under the description of the applicable impairment . . . .").

The ALJ made a comprehensive review of plaintiff's medical history, and determined that Dr. Alexander's opinion was not entitled to controlling weight because there was insufficient evidence to support that opinion.  The ALJ's determination was supported by substantial record evidence.  There seems to be no dispute that plaintiff had disc herniations.  The critical question, however, was the true effect of those herniations.  The regulations require "evidence" of nerve root compression.  Nowhere in the record is there a definitive finding of nerve root compression.  Evidence of such is characterized by several conditions noted above.  Of those, the record showed only that plaintiff had limited range of motion in his back.  The record does not show that plaintiff had neuro-anatomic distribution of pain.  Apparently giving the plaintiff the benefit of the doubt, the ALJ did find that plaintiff had radiculopathy, but even that finding could have gone the other way.  While plaintiff complained of radiating pain in his legs from time to time, various tests results were equivocal at best.  On October 10, 2002, Dr. Alexander noted that a recent EMG "suggest[ed] irritability of the left S1 nerve root[,]" but Dr. Alexander recorded "no findings of radiculopathy on physical exam."  (Tr. 213).  On March 10, 2003, Dr. Alexander found "no neurologic defect that [he could] detect by exam."  (Tr. 212).  A year later, on March 30, 2004, Dr. Alexander noted that "[t]rue neurogenic weakness can neither be confirmed nor excluded."  (Tr. 208).  A June 30, 2005 lumbar MRI showed mild stenosis at L3-4, no significant neural compromise at L4-5, and apparent encroachment on the left S1 nerve sleeve (tr. 203).  A week later, a July 7, 2005 EMG was read as "suggestive but not diagnostic of left L4 radiculopathy."  (Tr. 202).  On July 27, 2006, Dr. Alexander noted that he found no true neurogenic weakness, and that lumbar radiculopathy was "less evident."  (Tr. 255).  Finally, on October 20, 2006, the same day he opined that plaintiff met listing 1.04A, Dr. Alexander noted "no clear evidence of lumbar radiculopathy" and further

noted that he had completed a form stating that plaintiff "*apparently* meets the diagnostic criteria for Social Security Disability."  (Tr. 260.) (Emphasis added). Plaintiff attacks the ALJ's reliance on Dr. Whitkind's testimony that Dr. Alexander's opinion was unsupported by the evidence, including evidence of true radiculopathy. However, since the ALJ found that there was radiculopathy, plaintiff's argument is unclear at best.  Moreover, it is worth noting that in April 2007, after the ALJ's decision and four months after plaintiff's LDI, Dr. Alexander reported that there was no true neurologic deficit on examination (tr. 264).  It was not error for the ALJ to find that plaintiff's low back pain with radiculopathy was severe, but not severe enough to meet the listing.

Another Listing requirement needed to support a finding of nerve root compression is "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss."  The evidence on these conditions was also equivocal at best.  Dr. Alexander consistently found back pain plus some break away weakness in plaintiff's legs which he attributed to back pain, but as late as October 2006 he found no evidence of atrophy (tr. 260).  Moreover, Dr. Alexander consistently reported normal reflexes and normal strength (tr. 201, 207, 208, 210, 228, 232).   The only exceptions were notations of motor weakness attributed to back pain rather than actual motor loss (tr. 228, 260).  In April 2002 Dr. Wingo noted that the recent EMG showed no ventral root denervation and on examination found no focal motor deficit (tr. 222-23).

Finally, reports of positive leg raising were sketchy.  Dr. Wingo reported some hamstring tightness on straight leg raising (and normal reflexes) in December 2001 (tr. 226-27), and again in April 2002 (tr. 222-23).  Soon after plaintiff's original injury Dr. Alexander reported negative straight leg raising (tr. 241).  He never mentioned it again, either as positive or negative.  Thus, the "positive straight leg raising test (both sitting and supine) required by § 1.04A was not proven.  For all of the foregoing reasons, plaintiff has failed to present "specific medical findings that meet the

various tests listed under the description of the applicable impairment," *Bell, supra*. The required evidence for a finding of nerve root compression was not met, and plaintiff is not entitled to reversal on this ground.

The second component of plaintiff's argument on Dr. Alexander's opinion is that he was clearly disabled within the meaning of the Act even if he did not meet the Listing requirements. Plaintiff places great emphasis on Dr. Alexander's repeated statements that plaintiff could not work. The opinion by a treating physician that a patient is "unable to work" or is "disabled" is not dispositive for purposes of Social Security claims. The Commissioner's regulations and the interpretations of those regulations clearly provide that an ALJ should give weight to a physician's opinions concerning the nature and severity of a claimant's impairments, but that the ultimate question of whether there is disability or inability to work is reserved to the Commissioner. For instance, Title 20 C.F.R. § 404.1527(e)(1) specifically states that a finding of disability or inability to work by a medical source does not mean that the Commissioner will automatically reach the same conclusion. *See also* Title 20 C.F.R. § 416.927(e). Furthermore, the Commissioner "will not give any special significance to the source" of an opinion on issues reserved for the Commissioner. Title 20 C.F.R. § 404.1527(e)(3) and § 416.927(e)(3); *see also* Social Security Ruling 96-5p (whether an individual is disabled is a question reserved to the Commissioner; treating source opinions on such questions are "never entitled to controlling weight or special significance"). Although such opinions on disability are not entitled to controlling weight, they must not be ignored, and the Commissioner must examine the entire record to determine whether such opinions are supported by the record. SSR 96-5p. In *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997) the court reversed the ALJ's finding of no disability, in part because the ALJ relied on a treating physician's report that the claimant could no longer work as a longshoreman when this report was ambiguous as to whether the claimant could do

*any* work, and the physician subsequently wrote a letter saying the claimant was completely disabled.

To require the Commissioner to accept as controlling a statement that a patient is or is not disabled would require the Commissioner to credit the physician not only with knowledge of the patient's physical condition, but also with an understanding of the nuances of how the regulations analyze physical limitations with respect to job experience, age, education, transferability of skills, the definitions of the various levels of exertion relevant to types of work, and similar matters.  Moreover, a physician's opinion on whether a person is able to work may be colored by such things as the physician's knowledge of local hiring practices, whether there are specific job vacancies, a person's reluctance to do a particular kind of work, and similar matters.  These things are not properly considered by the Commissioner in determining disability.  Title 20 C.F.R. §§ 404.1566, 416.966.  For all these reasons, a physician's opinion that his or her patient cannot work or is disabled is not a conclusive medical opinion for the purpose of Social Security benefits determinations and by itself is not entitled to special significance.

Here, when Dr. Alexander's numerous statements are examined in detail, plaintiff's reasoning fails.  Plaintiff was a truck driver.  After his injury he could not work as a truck driver, but by October 2001 a PCE indicated that he could do light work, and Dr. Alexander agreed (tr. 228).  A year later the PCE findings were still thought to be valid (tr. 213).  Nothing had changed in March 2003 other than the addition of a sit/stand requirement, no more than 30 minutes at a time (tr. 212).  In October 2003, after a period of deconditioning (discussed below), Dr. Alexander felt that the PCE findings were no longer valid, meaning plaintiff could no longer work at that level (tr. 210).  It was not until February 2005 that Dr. Alexander reported that plaintiff had been looking for work but was unemployable.  He stated that plaintiff was totally disabled, with a legitimate medical condition, and work experience only in labor intense occupations, no transferrable skills, and no employment

opportunities (tr. 207).  However, three months later, Dr. Alexander recognized that while plaintiff may no longer be able to work as a trucker, "[h]e certainly may be able to return to work at a less physically demanding profession" with training (tr. 205). In July 2005 Dr. Alexander noted that plaintiff's employment prospects were "probably very minimal." (Tr. 201).  In March 2006 Dr. Alexander opined that plaintiff "appear[ed] to be unable to work in any meaningful capacity." (Tr. 200).  And although Dr. Alexander opined in October 2006 that plaintiff met the requirements of Listing 1.04A, in April 2007 (after plaintiff's LDI), he stated that plaintiff was "totally and permanently disabled in regard to all occupations for which he has prior education[,] experience or training." (Tr. 264).

This last comment neatly underscores the reason that the ultimate question of disability is reserved to the Commissioner.  Whether a person is disabled is not determined solely by his physical condition and his prior work.  Disability is "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Clearly, Dr. Alexander rightly believed that plaintiff could not do heavy labor, but that did not mean he could not do any work.  Dr. Alexander's repeated references to plaintiff being able to work at some less strenuous occupation, and his emphasis on plaintiff not being able to do what he was trained for or experienced in, was itself substantial record evidence in support of the ALJ's decision.

The plaintiff also criticizes the ALJ for referring to Dr. Alexander's statement that there had been "deconditioning" as effectively cherry picking.  Plaintiff says that this statement was an isolated instance that does not serve as substantial record evidence.  By itself, perhaps not, but the statement was not made in a vacuum.  On October 13, 2003, Dr. Alexander stated forthrightly that plaintiff "is not exercising as faithfully," that this was general deconditioning, and that plaintiff had gained 26

pounds over the prior year.  Dr. Alexander did not say that plaintiff *could not* exercise, only that he *did not*.  Adding the word "faithfully" clearly shows an expectation on Dr. Alexander's part that plaintiff *should have* been exercising. Failure to seek treatment or follow a physician's orders can be used as a basis for discounting subjective complaints of pain and, by extension, an opinion based on those complaints. *Watson v. Heckler*, 738 F.2d 1169 (11th Cir. 1984).  It was not error for the ALJ to rely on this statement as part of his reason for discounting Dr. Alexander's opinion.

Plaintiff attacks various other parts of the ALJ's decision but all his contentions are based on disagreements on what a part of the record meant, not what it said.[1]  The ALJ determined what the record meant.  It was the ALJ's function to determine whether plaintiff was disabled or not disabled, and it is this court's function not to agree or disagree, but to determine whether the ALJ's decision was supported by substantial record evidence.  The medical record outlined above could have supported either a favorable or an unfavorable ruling.  Plaintiff has failed to show error, and is not entitled to reversal on this ground.

2.  <u>Severe impairments.</u>

---

[1]  These include arguments that the ALJ erred: in referring to plaintiff's course of treatment as "sparse," a characterization that was not without foundation; in stating that plaintiff went to Dr. Alexander on one or more occasions simply to have forms filled out, not for treatment, which was true, although plaintiff was examined (but not treated) at the time; in finding that one of Dr. Alexander's opinions was not entitled to weight because it was outside his expertise, which was correct, because the subject opinion was that plaintiff had a medical condition (an appropriate opinion for a doctor) and that he was unable to work (not so); in finding that plaintiff was "aggressive" in his efforts to find work, another characterization not without foundation; and in finding that plaintiff had been given leave, over a lengthy period, to go to work but had not done so, which could be argued either way based on the record.  Again, these arguments focus on the proper interpretation of the record from plaintiff's perspective.  The record supported the ALJ's determinations on these points.  Plaintiff made other arguments that merit little discussion.  For example, plaintiff says that the testifying medical expert, Dr. Whitkind, remarked that physicians sometimes complete disability forms so as not to be in a confrontational situation with a patient.  Plaintiff expresses shock that such an accusation would be made, and contends that the remark was spurious and was not supported by evidence.  It may be shocking and it may be spurious, but Dr. Whitkind testified to it - not that Dr. Alexander fudged his records but that physicians sometimes do - so it was evidence, however speculative.  Even plaintiff concedes that the ALJ did not make reference to this remark in his opinion, noting only that he "evidently" relied on Dr. Whitkind's opinion.  To the extent that Dr. Whitkind was speculating, without objection, plaintiff is speculating on that speculation.

Plaintiff's second ground for reversal is based on the ALJ's failure to find that he had a severe condition of migraine headaches.  Plaintiff also argues that the ALJ should have credited Dr. Bristol's opinion that plaintiff was disabled by migraine headaches.  At step two the ALJ must determine whether the claimant has a severe impairment.  20 C.F.R. § 1520(c).  The burden at this step is on the claimant.  *Chester v. Bowen, supra.*  The Commissioner's regulations provide:

> What we mean by an impairment(s) that is not severe.
>
> (a) Non-severe impairment(s).  An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.
> (b) Basic work activities.  When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs.  Examples of these include--
> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations;  and
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521.  The Commissioner has adopted an interpretive ruling that specifically addresses how to determine whether medical impairments are severe with respect to an individual's ability to engage in substantial gainful activity.  The ruling provides in part:

> As explained in 20 C.F.R. §§ 404.1520, 404.1521, 416.920(c), and 416.921, at the second step of sequential evaluation it must be determined whether medical evidence establishes an impairment or combination of impairments "of such severity" as to be the basis of a finding of inability to engage in any SGA [substantial gainful activity].  An impairment or combination of impairments is found "not severe" and a finding of "not disabled" is made at this step when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered (i.e., the person's

impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities). Thus, even if an individual were of advanced age, had minimal education, and a limited work experience, an impairment found to be not severe would not prevent him or her from engaging in SGA.

SSR 85-28, 1985 WL 56856.

In *Brady v. Heckler*, 724 F.2d. 914 (11th Cir. 1984) the Eleventh Circuit used the test later adopted in SSR 85-28 to state that a medically determinable impairment is not severe if a claimant's abnormalities are of such kind that they would not be expected to interfere with the individual's ability to work. The Eleventh Circuit has further explained that

> [s]tep two is a threshold inquiry. It allows only claims based on the most trivial impairments to be rejected. The claimant's burden at step two is mild. An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience. Claimant need show only that her impairment is not so slight and its effect is not so minimal.

*McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).  It is not for the reviewing court to say that under these circumstances plaintiff's impairment is or is not trivial, only that the ALJ must properly justify his finding on that issue.  And the ALJ's findings must be supported by substantial evidence.

In response to questions from his attorney, plaintiff testified that he has daily, constant headaches that make him nauseated (tr. 295-96). Dr. Alexander's records, however, made no mention of headaches.  Plaintiff saw Dr. Bristol in late 2005, complaining of a cough and "a headache since Monday" (three days earlier) (tr. 245). Dr. Bristol's assessment was probable asthmatic bronchitis, but he made no mention of the headache (*id.*).  Plaintiff returned in three weeks, "100% better."  (Tr. 244).  Dr. Bristol gave plaintiff medication for his bronchitis and again the headache was not mentioned.  Plaintiff returned to Dr. Bristol in April, 2006, saying he had a headache "off and on" since the day before.  Dr. Bristol diagnosed muscle tension

headaches and prescribed Skelaxin (tr. 243).  Plaintiff returned on August 14, 2006 with forms from his lawyer that Dr. Bristol filled out, noting severe migraine headaches (tr. 248).  This was the first time severe migraine headaches had even been mentioned by anybody.

The ALJ discounted Dr. Bristol's opinion based on the alleged migraines, stating that the evidence for migraines was scant, that Dr. Bristol had not referred plaintiff for testing or evaluation of chronic headaches, and that plaintiff had never gone to the emergency room for severe headache pain.  Plaintiff says that these findings, even if true, do not contradict plaintiff's testimony.  The court disagrees. The condition plaintiff described in his sworn testimony was one of constant, unrelenting, nauseating headaches over an unspecified period of time (tr. 295-96). Dr. Bristol's records simply do not support this testimony.  As discussed in the next section, a patient telling his doctor that he has a headache does not make it so.

3.    Plaintiff's subjective complaints of pain.

Finally, plaintiff contends that the ALJ erred in discounting his subjective complaints of pain, and particularly in not considering the extent of his pain in determining plaintiff's RFC.  As this court is well aware, pain is treated by the Regulations as a symptom of disability.  Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, ". . . unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms."  *Accord* 20 C.F.R. § 416.929.  The Eleventh Circuit has articulated the three-part pain standard, sometimes referred to as the *Hand*[2] test, as follows:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged

---

[2]*Hand v. Bowen*, 793 F.2d 275, 276 (11th Cir.1986) (the case originally adopting the three-part pain standard).

pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Ogranaja v. Commissioner of Social Security*, 186 Fed.Appx. 848, 2006 WL 1526062, *3+ (11th Cir. 2006) (quoting *Wilson*) (Table, text in WESTLAW); *Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1216 (11th Cir. 1991).

The Eleventh Circuit has also approved an ALJ's reference to and application of the standard set out in 20 C.F.R. § 404.1529, because that regulation "contains the same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part standard." *Wilson, supra*, 284 F.3d at 1226. Thus, failure to cite to an Eleventh Circuit standard is not reversible error so long as the ALJ applies the appropriate regulation.

But "[w]hile both the Regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." *Elam*, 921 F.2d at 1215. The Eleventh Circuit has held that "pain alone can be disabling, even when its existence is unsupported by objective evidence." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)(citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)); *Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987); *Hurley v. Barnhart*, 385 F.Supp.2d 1245, 1259 (M.D.Fla. 2005). However, the presence or absence of evidence to support symptoms of the severity claimed is a factor that can be considered. *Marbury*, 957 at 839-840; *Tieniber v. Heckler,* 720 F.2d 1251, 1253 (11th Cir. 1983).

Finally, if the Commissioner refuses to credit subjective testimony of the plaintiff concerning pain he must do so explicitly and give reasons for that decision. *MacGregor v. Bowen*, 786 F.2d at 1054. Where he fails to do so, the Eleventh Circuit has stated that it would hold as a matter of law that the testimony is accepted as true. *Holt v. Sullivan*, 921 F.2d at 1223; *MacGregor v. Bowen*, 786 F.2d at 1054. Although the Eleventh Circuit does not require an explicit finding as to a claimant's

credibility, the implication must be obvious to the reviewing court. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable the reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole. *Dyer*, 395 F.3d at 1210 (11th Cir. 2005) (internal quotations and citations omitted). And of course, the reasons articulated for disregarding the plaintiff's subjective pain testimony must be based upon substantial evidence. *Wilson*, 284 F.3d at 1225-1226; *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991); *Hurley*, 385 F.Supp.2d at 1259.

Underlying the *Hand* standard is the need for a credibility determination concerning a plaintiff's complaints of pain. Those complaints are, after all, subjective. "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain." *Scharlow v. Schweiker*, 655 F.2d 645, 649 (5th Cir. 1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints").[3] People with objectively identical conditions can experience significantly different levels of pain, and pain is more readily treated in some than in others. "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed] pain. This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts . . . ." *Hand, supra,* at 1548-49. It is within the ALJ's "realm of judging" to determine whether "the quantum of pain [a claimant] allege[s] [is] credible when considered in the light of other evidence." *Arnold v. Heckler*, 732 F.2d 881, 884 (11th Cir. 1984). Thus, a physician may be told by a patient that he or she is in pain, and the physician may

---

[3] Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

believe it, but the ALJ is not bound by that.  The evidence as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief or the plaintiff's claims, is the basis for the ALJ's credibility determination.

Here the plaintiff unquestionably had an underlying medical condition.  The severity of the condition, as discussed above, was not so clear.  The ALJ found that plaintiff's claims as to the intensity, persistence and limiting effects of his pain were not entirely credible (tr. 27).  The foregoing discussion of the differences between plaintiff's subjective complaints of pain and the diagnostic findings shows inconsistencies, as does plaintiff's version of his headaches compared to the medical record as a whole.  Finding that plaintiff's claims were not entirely credible was well withing the realm of judging of the ALJ.  Plaintiff has failed to show error, and he is not entitled to reversal.

Accordingly, it is respectfully RECOMMENDED that the decision of the Commissioner be AFFIRMED, that this action be DISMISSED and that the clerk be directed to close the file.

At Pensacola, Florida this 4th day of September, 2008.


/s/ *Miles Davis*
**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO PARTIES

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).
Case No: 5:07cv258/RH/MD